UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------
BRENDA S.,

Plaintiff,

DECISION AND ORDER
1:25-CV-08258-GRJ

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
---------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In June of 2021, Plaintiff Brenda S.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications, in part. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on August 27, 2026. Presently pending is Plaintiff's Motion for Judgment on the Pleadings

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 16). For the following reasons, Plaintiff's motion is due to be denied and this case is dismissed.

## I. BACKGROUND

### *A. Administrative Proceedings*

Plaintiff applied for benefits on June 24, 2021, and June 30, 2021, alleging disability beginning February 14, 2016. (T at 283-89, 290-311).[2] Plaintiff's applications were denied initially and on reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on August 25, 2022, before ALJ Ifeoma Iwaumadi. (T at 1518-33). On November 28, 2022, the ALJ issued a decision denying Plaintiff's applications. (T at 107-23). On February 2, 2024, the Social Security Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (T at 126-27).

A second hearing was held before the same ALJ on August 22, 2024. (T at 36-54). Plaintiff appeared with an attorney and testified. (T at 42-50) The ALJ also received testimony from Helene Feldman, a vocational expert. (T at 50-53).

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12.

*B. ALJ's Decision*

On September 20, 2024, the ALJ issued a decision denying the applications for benefits, in part. (T at 14-35). The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2016 (the date last insured) and had not engaged in substantial gainful activity since February 14, 2016 (the alleged onset date). (T at 19).

The ALJ concluded that Plaintiff's major depressive disorder with psychosis, bipolar disorder, generalized anxiety disorder, headaches, and glaucoma were severe impairments as defined under the Act. (T at 20).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 20).

The ALJ determined that, prior to August 26, 2022, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: no more than occasional depth perception; no work involving unprotected heights, moving mechanical parts, or operating a motor vehicle. (T at 22).

The ALJ also found Plaintiff limited to work requiring no more than simple, routine tasks, simple work-related decisions, occasional contact

with supervisors, coworkers, and the public, and occasional changes in a routine work setting (T at 22).

The ALJ determined that Plaintiff had no past relevant work. (T at 26). The ALJ noted that Plaintiff's age category changed on August 26, 2022 (the disability onset date) and found that, considering her age, education (limited), and work experience (no past relevant work) there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform as of that date. (T at 27).

However, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed prior to the disability onset date. (T at 26-27).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between June 30, 2016 (the alleged onset date) and August 26, 2022 (the disability onset date). (T at 27-28).

On August 7, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's second decision the Commissioner's final decision. (T at 1-6).

### *C. Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint October 6, 2025. (Docket No. 1). On February 25, 2026, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 16, 17). The Commissioner interposed a brief opposing the motion and requesting judgment on the pleadings, on March 26, 2026. (Docket No. 19). On April 9, 2026, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 20).

## II. APPLICABLE LAW

### *A. Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

*B. Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision. First, she argues that the ALJ did not properly evaluate her subjective complaints. Second, Plaintiff challenges the ALJ's step five analysis. The Court will address each argument in turn.

### *A. Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ

retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a

credibility inquiry." *Meadors*, 370 F. App'x at 184. This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: She has been receiving mental health treatment since 2016 and was hospitalized in the fall of 2020 for a psychotic episode. (T at 1522-23, 1526-27, 1529). She hears voices, experiences delusions, and has severe anxiety attacks. (T at

1525, 1527). She is easily confused, requires assistance performing errands, and has difficulty with household chores. (T at 43, 1527-30).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 24).

The Court finds the ALJ's decision is supported by substantial evidence and is consistent with applicable law. Here's why.

First, the ALJ's decision is supported by a reasonable reconciliation of the medical opinion evidence.

Dr. John Laurence Miller performed a consultative psychiatric evaluation in December of 2021. He diagnosed bipolar I disorder, with symptoms partly controlled by medication. (T at 616). Dr. Miller opined that Plaintiff had moderate impairment in her ability to regulate emotions, control behavior, and maintain well-being; moderate limitation with respect to sustaining concentration and performing at pace; mild impairment in social interaction; no limitation as to understanding, remembering, or applying directions or instructions; and no impairment in using reason and

judgment to make work-related decisions or sustain an ordinary routine and regular attendance. (T at 615).

In January of 2022, Dr. S. Bhutwala, a non-examining State Agency review physician, assessed no impairment in Plaintiff's ability to understand, remember, or apply information; mild limitation with respect to social interaction; moderate impairment in Plaintiff's capacity to concentrate, persist, or maintain pace; and mild limitation as to adapting or managing herself. (T at 61). Dr. Bhutwala opined that Plaintiff could meet the mental demands of unskilled work. (T at 66).

Dr. D. Brown, another State Agency review physician, reached the same conclusion in April of 2022. (T at 94).

In March of 2023, Dr. Mirian Zibkoff, a psychiatrist, completed a medical source statement. Dr. Zibkoff stated that she had been treating Plaintiff since 2016. (T at 881). She diagnosed bipolar disorder, mixed. (T at 881). Dr. Zibkoff reported that Plaintiff had "significantly diminished concentration, anxiety, depression, insomnia, diminished energy, anhedonia, and panic attacks." (T at 882).

In one section of the medical source statement, Dr. Zibkoff reported that she could not predict how Plaintiff would react to a work environment and declined to complete a checkbox assessment of Plaintiff's ability to

meet the mental demands of basic work activity. (T at 882-83). In a subsequent section, Dr. Zibkoff opined that Plaintiff had marked restriction in her activities of daily living, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace. (T at 884).

In discounting Plaintiff's subjective complaints of disabling limitation, the ALJ assigned some persuasive value to the opinions of Drs. Bhutwala, Brown, and Miller, but incorporated additional limitations into the RFC to account for evidence of impairment in Plaintiff's ability to interact with others, follow instructions, and attend to tasks. (T at 25). This supports the ALJ's decision. *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

The ALJ assigned limited persuasive weight to Dr. Zibkoff's opinion. (T at 25). The ALJ reasonably found Dr. Zibkoff's assessment of marked impairment inconsistent with the other medical opinions and with the

treatment record, which documented complaints of anxiety and depression, but with generally unremarkable clinical findings. (T at 25, 465, 513, 524, 534, 544, 550, 554, 564, 571, 578, 582, 590, 598, 602, 608, 615, 625, 631, 644, 652, 664, 669, 676, 680, 685, 801, 836, 840, 870, 878).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount complaints and/or assessments of marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec*., No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021)(affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec*., No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

The ALJ also gave appropriate consideration to Plaintiff's activities of daily living, which included work as a home health aide (albeit not at the level of substantial gainful activity), performing simple household chores, and managing her money. (T at 20, 24, 42, 331, 615).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount subjective complaints and/or assessments of extreme impairment where, as here, the claimant's activities could reasonably be considered inconsistent with that level of limitation. *See Riaz v. Comm'r of Soc. Sec*., No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

Plaintiff points to evidence in the record supporting her complaints of disabling impairments, including a psychiatric hospitalization in 2020, persistent headaches, and medication side effects.

The ALJ, however, adequately addressed the evidence of impairment in Plaintiff's attention, concentration, persistence, and social skills by limiting her to unskilled work involving no more than occasional social interaction. (T at 22). *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related

psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases).

Noting that Dr. Miller's consultative examination was performed in December of 2021, nearly three years before the ALJ's September 2024 decision, Plaintiff also argues that the ALJ erred by failing to obtain an updated evaluation.

However, "[c]onsultative examinations do not have expiration dates," *Villalobo v. Saul*, No. 19CIV11560CSJCM, 2021 WL 830034, at *19 (S.D.N.Y. Feb. 9, 2021), and an additional examination is not warranted without evidence that the claimant's condition deteriorated during the period at issue. *See Rosa v. Comm'r of Soc. Sec*., No. 17-CIV-3344-NSR-JCM, 2018 WL 5621778, at *10 (S.D.N.Y. Aug. 13, 2018).

Moreover, Plaintiff's counsel told the ALJ that he had no objection to the evidentiary record during the second administrative hearing and that he

was not waiting for, or requesting, any additional evidence. (T at 39-41). *See generally Curley v. Comm'r of Soc. Sec. Admin*., 808 F. App'x 41, 44 (2d Cir. 2020)("Although Curley argues that the ALJ should have obtained a medical opinion …, Curley does not explain why neither he nor his counsel requested such an opinion.").

While Plaintiff suffers from impaired mental functioning, as noted above, the ALJ did not dismiss Plaintiff's subjective complaints and instead found her limited to unskilled work involving only occasional social interaction. (T at 22).

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living. (T at 22-26).

This is sufficient to sustain the disability determination under the deferential standard of review applicable here. *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ

"met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability …").

*B. Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed prior to the disability onset date. (T at 26-27).

In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of hand packager, package sealer, and mail clerk, which exist in significant numbers in the national economy. (T at 26-27, 50-53).

Plaintiff contends that the ALJ erred by failing to address conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT").

The Social Security Administration has taken administrative notice of the DOT, which was published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).

Social Security Ruling 00-4p provides that when a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …." SSR 00-4p.

If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault v. SSA*, 683 F.3d 443, 446 (2d Cir. 2012)(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

SSR 004-p further provides that the Commissioner will "rely *primarily* on the DOT … for information about the requirements of work in the national economy." SSR 004-p (emphasis added).

Notably, however, neither the DOT nor the vocational expert's testimony "automatically 'trumps' when there is a conflict;" rather, the ALJ "must resolve the conflict by determining if the explanation given by the

[vocational expert] is reasonable and provides a basis for relying on the … testimony rather than on the DOT information." *Id*.

Plaintiff contends that the DOT descriptions provide that (1) the mail clerk position requires reasoning skills beyond simple, routine tasks and (2) the hand packager and machine package sealer positions involve the use of machinery, which conflicts with the RFC prohibition on working with moving mechanical parts.

At the outset, it should be noted that the ALJ asked the vocational expert whether her testimony was consistent with the DOT. She testified that it was, except for the issue of off-task time, where her testimony was based on her "knowledge, experience, and training [regarding] the present-day work environment. (T at 52).

In addition, Plaintiff's counsel was given the opportunity to cross-examine the expert and did not ask about the mail clerk position's reasoning level and/or the other occupations' demands regarding the use of machinery. (T at 52-53). *See generally Holt v. Colvin*, No. 3:16-CV-01971 (VLB), 2018 WL 1293095, at *10 (D. Conn. Mar. 13, 2018)("Cross-examination of the vocational expert provides the plaintiff with the opportunity to challenge a vocational expert's qualifications as well as the statistics or methodologies upon which the vocational expert relies, and it

behooves counsel to make these challenges in order to preserve them on appeal."); *Cutillo v. Comm'r of Soc. Sec.*, No. 517CV0609MADWBC, 2018 WL 4635704, at *11 (N.D.N.Y. May 4, 2018).

The Commissioner does not challenge Plaintiff's position that the ALJ should have addressed the apparent discrepancy between the mail clerk position's reasoning level and the limitation to simple, routine tasks. (Docket No. 19, at p. 20).

As a matter of law, the ALJ's "catch-all" question to the vocational expert regarding the DOT did not satisfy the Commissioner's "'duty to identify, explain and resolve' apparent conflicts onto the testifying expert." *Lockwood*, 914 F.3d at 94 (quoting *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015)).

Nonnetheless, the ALJ's apparent error regarding the mail clerk position is harmless because the vocational expert identified two other representative occupations. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b) (requiring a significant number of jobs "in one or more occupations ...".); *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that Bavaro can perform."); *see also Angi W. v. Comm'r of Soc. Sec.*, No. 21-CV-0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22,

2023)("[A]lthough vocational experts customarily offer three jobs that a claimant perform as part of their testimony, the ALJ does not have a corresponding duty to find that each of the three jobs offer significant numbers of jobs in the national economy: one occupation is sufficient."); *Crespo v. O'Malley*, No. 22 CIV. 954 (SLC), 2024 WL 1255431, at *8 (S.D.N.Y. Mar. 25, 2024).

Additionally, there does not appear to be a conflict between the vocational expert's testimony and the DOT. The DOT provides that neither the hand packager nor machine package sealer positions require exposure to moving mechanical parts. *See* 1991 WL 687916; 1991 687941; *see also* *Canady v. O'Malley*, No. 5:23-CV-318-RJ, 2024 WL 2817542, at *3 (E.D.N.C. June 3, 2024)(finding that DOT was "consistent with the VE's testimony that the jobs of machine package sealer and hand packager could be performed with a limitation to no working around moving mechanical parts*"); Joyce H. v. Kijakazi,* No. CV 22-3152-CDA, 2023 WL 7554189, at *4 (D. Md. Nov. 14, 2023)("A review of the DOT entry for the job of hand packager reveals that this job does not involve exposure to moving mechanical parts.").

In her reply, Plaintiff advances an argument that the DOT's provision that neither of these occupations require working with moving mechanical parts is contrary to "common sense."

This type of argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to support a contrary conclusion. *See Strong v. Berryhill*, No. 17-CV-1286F, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019)(collecting cases); *Johnson v. Saul*, No. 3:19-cv-01222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules."); *Harrison v. Comm'r of Soc. Sec.*, No. 20-CV-5282 (BCM), 2022 WL 1289357, at *11 (S.D.N.Y. Apr. 29, 2022).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: September 28, 2026

s/ Gary R. Jones
GARY R. JONES
United States Magistrate Judge